***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Criminal No.: 10-219 (FLW) |
| v. | : | **OPINION** |
| EUDINA MARTINEZ, | : | |
| Defendant. | : | |

**WOLFSON, District Judge:**

Before the Court is Defendant Eudina Martinez's ("Defendant") motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). Defendant was charged in a four-count Indictment (the "Indictment"), which charged Defendant with knowingly and intentionally conspiring and agreeing with others to distribute, and possess with intent to distribute, cocaine, crack cocaine, heroin, and marijuana, in violation of 21 U.S.C. § 846. After a jury trial, Defendant was convicted of all four counts. During the trial, Defendant moved for a judgment of acquittal at the close of the Government's case, and renewed her motion at the close of all the evidence. In her motion, Defendant argues that there was insufficient evidence to support a conviction as to any of the counts and that a judgment of acquittal should be entered as to each of these counts.[1] Pursuant to Fed. R. Crim. P. 29(b), the Court reserved its ruling. In this Opinion, the Court renders its

---

[1] The Court notes that Defendant did not move pursuant to Fed. R. Crim. P. 29(c) as she did not file any post-trial motions.

decision with respect to Defendant's motion, and for the reasons stated below, Defendant's motion is **DENIED**.

## BACKGROUND

Commenced on July 12, 2010, over the course of five days, the Government presented a number of witnesses and introduced documentary evidence which it contends demonstrate that Defendant knowingly and intentionally conspired with other co-defendants to distribute illegal controlled substances in violation of 21 U.S.C. § 846. A brief recitation of the Government's case follows. During the trial, the Government alleged that Defendant and her husband, Roberto Carmenate Osorio ("Osorio"), a.k.a. Nene, and Bernabe Osuna, who at one point in time resided with Defendant and her husband in the same apartment, were involved in an illegal drug operation wherein Defendant aided in the drug enterprise.[2] Specifically, on December 2, 2009, Defendant, her husband and another drug supplier participated in the sale of two kilograms of cocaine outside of a laundromat in North Bergen, New Jersey. In addition, the Government alleged that Defendant was involved in the sale of other drugs, namely, crack cocaine, heroin and marijuana.

The Government presented the testimony of its key witness, Nestor Gibbs, a confidential informant, who, at the direction of the Drug Enforcement Administration ("DEA"), purchased illegal drugs from Osorio. With respect to Defendant's involvement in the conspiracy, Gibbs testified that Defendant was present at the laundromat on December 2, 2009. See Trial Tr. v2, pp. 186, 191. He further testified that Defendant was present at the time Osorio loaded the drugs inside a laundry basket into Gibbs' car; however, Defendant did not physically assist Osorio. Id. at p. 187. Pursuant

---

[2]Defendant, Osorio and Osuna were charged with conspiracy in the same Indictment. Both Osorio and Osuan pled guilty and Defendant proceeded to trial alone.

to Fed. R. Evid. 404(b), Gibbs also testified that Defendant was present with Osorio at various other drug transactions, which were unrelated to the Indictment. Id. at pp. 125-128. Gibbs' testimony was corroborated by, inter alia, Detective Eduardo Davila, a Newark investigator assigned to Defendant's criminal case, and Christopher Reddington and Margarita Abbattiscianni,. Special Agents of the Drug Enforcement Administration ("DEA"). In addition, as will be delineated later in this Opinion, the Government presented evidence, albeit circumstantial, to show Defendant's involvement in the conspiracy – namely that Defendant conducted financial affairs for the illegal enterprise, provided cover for the conspiracy and attempted to hide or destroy illegal drugs and other evidence of the crime.

After the close of the Government's case, defense counsel moved for a judgment of acquittal. Counsel argued that the evidence and the testimony presented by the Government are limited and tenuous because the Government was only able to show that Defendant was simply present at the drug transaction in question, and that she did not participate or have knowledge of the illegal transaction. In fact, counsel argued that Defendant had no knowledge of any drugs present at her residence or elsewhere. See Trial Tr. v5, pp. 125-26. In that regard, counsel contended that when weighing all the Government's evidence, "there is nothing that links [Defendant] to the crack cocaine, nothing to the heroin, nothing to the cocaine that was seized in the house." Id. at p. 126. The Court reserved its ruling under Rule 29(b). See Fed. R. Civ. P. 29 (b)("The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict).

Next, the defense presented its case by offering testimony from two individuals, Antonio

Chelala and Arsenio Erasmo Gomez. As more details regarding their testimony will be provided later in this Opinion, the Court will not relay them here. After the close of all the evidence, Defendant renewed her motion for a judgment of acquittal. The Court reserved its ruling again to allow the jury to deliberate. After a few hours of deliberation, the jury found Defendant guilty of all counts, and now the Court will decide Defendant's Rule 29 motion.[3]

## DISCUSSION

### I.   Standard of Review

Federal Rule of Criminal Procedure 29 provides that the district court, upon the motion of a defendant or upon its own motion, shall enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R. Crim.P. 29(a). In ruling on a Rule 29 motion, the district court must determine whether any rational trier of fact could have found proof of the defendant's guilt beyond a reasonable doubt based upon the available evidence presented at trial. United States v. Smith, 294 F.3d 473, 478 (3d Cir. 2002), (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In that connection, the Third Circuit has cautioned strongly that the district court "be ever vigilant in the context of…[a Rule 29 motion] not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." United States v. Flores, 454 F.3d 149, 154 (3d Cir. 2006).

The Court must view the evidence in its entirety, and in the light most favorable to the Government. United States v. Hoffecker, 530 F.3d 137, 146 (3d Cir. 2008). The Government is also entitled to "the benefit of inferences that may be drawn from the evidence[,] and the evidence may

---

[3]Aside from oral arguments made by counsel, neither party submitted briefing in connection with the motion.

be considered probative even if it is circumstantial." United States v. Patrick, 985 F. Supp. 543, 548 (E.D.Pa. 1997) (citing United States v. Pecora, 798 F.2d 614, 618 (3d Cir. 1986)); see also United States v. Griffith, 17 F.3d 865, 872 (3d Cir. 1994). Hence, the movant bears a heavy burden establishing that the evidence presented by the Government during trial was insufficient to support a conviction. See United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990); United States v. Young, 334 Fed. Appx. 477, 480 (3d Cir. 2009) (the movant "bears a heavy burden in light of our 'particularly deferential' standard of review in cases challenging the sufficiency of the evidence" (citations omitted)).

In fact, the Third Circuit has cautioned that acquittal should "be confined to cases where the prosecution failure is clear." Smith, 294 F.3d at 477; United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). "The evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." United States v. Pungitore, 910 F.2d 1084, 1129 (3d Cir. 1990). "[T]he question is whether reasonable minds [would find] guilt beyond a reasonable doubt, not whether reasonable minds must [find] guilt beyond a reasonable doubt." United States v. Ellisor, 522 F.3d 1255, 1271 (11th Cir. 2008). The jury is free to draw between reasonable interpretations of the evidence presented at trial. United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). Accordingly, an acquittal should only be reserved in instances where "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991); United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987).

Because the Court reserved its decision on Defendant's Rule 29 motion, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Civ. P. 29(b). Therefore, the Court will first assess evidence presented in the Government's case, and then assess all the evidence at the close of Defendant's case.

## II.   Conspiracy

### A.   Government's Case

Since all counts of the Indictment are based upon violations of 21 U.S.C. § 846, the Court focuses on essential elements of conspiracy, which are the following: "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." United States v. Mastrangelo, 172 F.3d 288, 292 (3d Cir. 1999); United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006). "The elements of conspiracy . . . can be proven entirely by circumstantial evidence." See United States v. Brodie, 403 F.3d 123, 134 (3d Cir. 2005); Young, 334 Fed. Appx. at 481. Indeed, "[a] jury may infer guilt from the surrounding circumstances and presume that a defendant acting in furtherance of a conspiracy is a knowing participant therein. An agreement may be inferred from circumstantial evidence that indicates concerted action." United States v. Delgado-Uribe, 363 F.3d 1077, 1083 (10th Cir. 2004); United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999)( "[t]he existence of a conspiracy 'can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding.'" (quoting Kapp, 781 F.2d at 1010 (internal quotation omitted)). The inference of an agreement must be more than mere speculation and conjecture. See United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995). Moreover, "[t]he government need not prove that each

defendant knew all of the conspiracy's details, goals, or other participants." Gibbs, 190 F.3d at 198 (citing United States v. Theodoropoulos, 866 F.2d 587, 593 (3d Cir. 1989), overruled on other grounds by United States v. Price, 13 F.3d 711, 727 (3d Cir. 1994)).  However, the government must proffer sufficient evidence from which a jury could have concluded that drug transaction in which the defendant was involved was "a step in achieving the conspiracy's common goal of distributing [illegal drugs] for profit." Theodoropoulos, 866 F.2d at 593.

Here, viewed in the light most favorable to the Government, the circumstantial evidence presented by the Government was sufficient for a reasonable jury to infer that Defendant, along with her husband, Osorio and others, had a unity of purpose, intended to achieve a common goal of distributing illegal drugs, and agreed to work together toward that goal.  Contrary to Defendant's argument, although no government witness testified about an express agreement between Defendant and the other co-conspirators, the Government presented ample evidence to allow the jury to infer reasonably that such an agreement existed and that Defendant carried out certain acts that were in furtherance of the conspiracy beyond her mere presence at the drug transactions.  First, Gibbs, the Government informant, testified that Defendant was present at various drug transactions, including the drug transaction that was the subject of the Indictment - albeit, she did not actively participate in the physical exchange of the drugs.  Specifically, Gibbs testified that prior to the December 2, 2009 drug transaction, he observed on several occasions Defendant and Osorio went to Mama Antoline's[4] house wherein drugs were off-loaded inside a garage from a compartment of their car. See Trial Tr. v2, pp. 125 - 129.  The jury was instructed to weigh this evidence only in connection

---

[4]Mama Antoline is the mother of Gibbs former drug partner, Antoline. See Trial Tr. v2, pp. 120-121.  Gibbs testified that drugs used in transactions were sometimes received in Mama Antoline's garage, which was located in Newark, New Jersey. Id.

with Defendant's intent and knowledge pursuant to Rule 404(b). Gibbs further testified that Defendant was also present outside the laundromat in question where drugs were transferred to Gibbs' vehicle. Importantly, the drugs were concealed inside a laundry basket underneath a pink blanket owned by Defendant, see Id. at pp. 188, and Defendant asked for the basket and the pink blanket to be returned after the drug transaction took place. See Trial Tr.v3, pp. 13-14, 72-73. Indeed, they jury was entitled to weigh Gibbs' testimony, a function which the Court cannot do on a Rule 29 motion.

The Court recognizes that although mere presence is insufficient to support a conviction for conspiracy, as Defendant vehemently points out, the jury was certainly permitted to consider Defendant's presence as a probative factor in determining whether she knowingly and intentionally participated in a criminal scheme. See United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005). "[T]he question is whether there is enough evidence to tie [Defendant] to the criminal activities . . . . [O]nce a conspiracy is established[,] only a slight connection to the conspiracy is necessary to support a conviction . . . . The term 'slight connection' means that [Defendant] need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details." United States v. Reed, 575 F.3d 900, 924 (9th Cir. 2009) (quoting United States v. Herrera-Gonzalez, 263 F.3d 1092, 1095 (9th Cir. 2001)). On that point, for instance, the Second Circuit has explained:

> [Defendant] [] contends that the evidence merely showed that he was present at the scene of a crime, rather than actually involved in criminal activity. Although we have "repeatedly emphasized" that a defendant's "mere presence" at a crime scene or "association with conspirators" does not establish "intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy," United States v. Samaria, 239 F.3d 228, 235 (2d Cir. 2001), overruled on other grounds by United States v. Huezo, 546 F.3d

> 174, 180 n.2 (2d Cir. 2008), a defendant's knowing and willing participation in a conspiracy nevertheless may be inferred from his "presence at critical stages of the conspiracy that could not be explained by happenstance," or by a "lack of surprise when discussing the conspiracy with others." [United States v. Aleskerova, 300 F.3d 286, 293 (2d Cir. 2002).] It may also be established by "evidence that the defendant participated in conversations directly related to the substance of the conspiracy[,] possessed items important to the conspiracy," id., or engaged in acts "exhibit[ing] a consciousness of guilt." United States v. Gordon, 987 F.2d 902, 907 (2d Cir. 1993). Here, the evidence showed that [defendant's] presence at critical stages of the conspiracy could not be explained by happenstance . . . .

United States v. Blackwood, 366 Fed. Appx. 207, 210 (2d Cir. 2010). Accordingly, coupled with other evidence, the Court finds that Defendant's presence at the drug transaction is the type of evidence the jury was entitled to consider.

Next, the Government introduced evidence of Defendant's purported financial involvement in the conspiracy. The Government offered the testimony of Defendant's landlord Sylvia Gutierrez. Gutierrez testified that Defendant, Osorio and two other men, including co-conspirator Osuna, rented a three-bedroom apartment located in the basement of Gutierrez's residence in North Bergen, New Jersey. See Trial Tr. v3, pp. 134-36. Importantly, Gutierrez testified that Defendant paid all the rent, including the rent for the two Mexican roommates, see Id., who, according to the Government witnesses, were allegedly involved in illegal drug schemes with Defendant and Osorio. Gutierrez further testified that she learned from Defendant that two locks were changed inside the apartment. See Id. at pp. 141-42.

The conspiracy period alleged in the Indictment spanned from May 2009 to March 2010. In addition to introducing evidence of the conspiracy prior to Defendant's arrest, the Government introduced telephone conversations between Defendant and her sister that were taped when Defendant was incarcerated. See Trial Tr. v5, pp. 32-37. In one conversation, Defendant urged her

sister to collect the proceeds of the December 2, 2009 drug sale from Gibbs in order for her to pay attorney's fees to defend this criminal case. The following is an excerpt from the trial transcript:

> [Sister:] Tell [Osorio] that he has to be – that he has to be firm with [Gibbs], with that man he has to be firm. Always tell him the same thing. Tell him this is to bring me the money that was owed. Bring me that money.
>
> [Defendant:] Yes, but if –
>
> [Sister:] He's a –
>
> [Defendant:] He tells him but he doesn't do it. He doesn't. Then he thinks that he was the one that, that all the problems. Understand.
>
> [Sister:] Uh-huh. Yes.
>
> [Defendant:] So then I don't – I don't know, he doesn't, then he says he's going to and he doesn't deposit anything. He's a – I don't know despicable.

Id. at pp. 36-37. Accordingly, the jury may consider this type of participation – collecting of drug proceeds – as Defendant's involvement in the conspiracy. See United States v. Lehr, 562 F. Supp. 366, 369 (E.D. Pa. 1983); see also United States v. Boone, 279 F.3d 163, 192 (3d Cir. 2002).

Moreover, the Government presented evidence to show that Defendant acted as a "cover" for the co-conspirators. In that respect, the Government introduced evidence that Defendant may have concealed drugs in her residence, wherein the co-conspirators also allegedly resided. See Trial Tr. v. 4, pp. 30-31, 33-35. Detective Davila testified that he and other officers obtained a search warrant for Defendant's residence. Id. at p. 30. When Detective Davila announced his presence and requested Defendant to open the door of her residence, Defendant suspiciously took approximately four to five minutes to open the door. Id. at p. 33. In the course of the search, Detective Davila testified that in an unlocked bedroom they found a kid's backpack containing a bundle of U.S. currency wrapped-up in clear cellophane. Id. at p. 37. The officers found more wrapped U.S.

currency in a second locked room, along with, among other items, 7.5 kilograms of marijuana in a duffle bag, 760 grams of marijuana in a black plastic bag and cocaine. Id. at pp. 42-43, 45, 49. The jury may reasonably infer from this evidence that Defendant had knowledge of the drugs in her residence and that Defendant may have taken time to conceal or destroy evidence when the officers requested entry to Defendant's apartment.

In sum, the Court finds that there was clearly sufficient evidence for a reasonable jury to find that Defendant was not merely present at the drug transactions, but rather, Defendant knew that drugs were being sold, and that she had an agreement with other co-conspirators to achieve the objectives of the conspiracy by performing different roles as she participated in the conspiracy. Certainly, the jury was entitled to weigh the evidence and credibility of the witnesses and draw a conclusion as to Defendant's role in the conspiracy. See, e.g., United States v. Gordon, 341 Fed. Appx. 588, 591 (11th Cir. 2009)("[a] rational trier of fact could conclude there was a conspiracy to possess and distribute cocaine, as a search of the hotel room in which . . . [the defendants] were staying revealed cocaine, bundles of cash . . . and drug paraphernalia. Considering [defendant's] inhabitation of the hotel room, and also his past involvement in drug offenses, a rational trier of fact could conclude [defendant] knew of the conspiracy's objective and knowingly participated in it"); United States v. Beckman, 222 F.3d 512, 518 (8th Cir. 2000)("[d]uring the course of the conspiracy, [defendant's] ex-wife . . . assisted with the drug operation by traveling with [defendant], keeping records, distributing drugs, and collecting money, all at [defendant's] direction").

  **B.**  **Defendant's Case**

Defendant introduced brief testimony from two witnesses in support of her case. The first witness, Antonio Besil, Defendant's brother-in-law, testified that Defendant and her husband came

from Florida to New Jersey on several occasions to visit family.  See Trial Tr. v5, pp.140-143.  However, Besil's testimony offered little in substance as Besil had no knowledge of any of the alleged illegal activities conducted by either Defendant or her husband.  Id. at pp. 148-166.  The second witness, Arsenio Erasmo Gomez, Osorio's friend, testified that he loaned Osorio the green Cadillac, which Osorio used to deliver drugs on December 2, 2009, to the laundromat.  See Id. at pp. 187-89.  It appears Gomez's testimony was offered to rebut Government's contention at trial that Defendant knew that the Cadillac was used solely for the transportation of drugs since the car did not belong to Defendant nor her husband.  Neither witnesses' testimony contradicted or refuted any of the Government positions as to Defendant's role in the conspiracy.  Rather, the testimony was offered to negate the Government's evidence that Defendant knew drugs were being sold when she was present at the laundromat and her general knowledge that drug transactions were being conducted by her husband.  In that respect, the jury was free to assess whether Defendant had the requisite knowledge in order to further the conspiracy.  Accordingly, Defendant's case did not sustain the high burden of showing that the Government's evidence was insufficient for a jury to find beyond a reasonable doubt that Defendant was a part of the drug conspiracy.

    Defendant's Rule 29 motion is denied.


DATED:  September 9, 2010                              /s/ Freda L. Wolfson
                                                                             The Hon. Freda L. Wolfson
                                                                             United States District Judge